# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| ERNEST C. WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:09CV211 FRB |
| | ) | |
| JUDITH SILVEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion to dismiss. The motion will be granted.

### The Complaint

Plaintiffs brought this action under 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Plaintiffs Ernest Williams ("Williams") and Dorris Ellis Williams ("Ellis") are husband and wife. Williams is incarcerated at Potosi Correctional Center ("PCC"). Defendants Judith Silvey, Sarah Whitener, and Rick Menteer are correctional officers at PCC. Eric Dunn is a correctional case worker at PCC.

The complaint alleges that Ellis has been visiting Williams at PCC since 1999. The complaint further alleges that Ellis has had a total left knee replacement, which causes her to sometimes have pain when she walks.

The complaint alleges that on January 19, 2008, Williams was issued a conduct violation by defendants Silvey and Whitener for breaking visitation rules, specifically, sharing a beverage and disobeying an order. The complaint further alleges that Silvey had previously harassed plaintiffs during their visits. The complaint further alleges that the conduct violation was "false and malicious."

The complaint alleges that on January 25, 2008, defendant Dunn held a hearing regarding the January 19 conduct violation. The complaint further alleges that Dunn found Williams to be guilty of the conduct; the complaint further alleges that Dunn sanctioned them to no contact visits for thirty days and gave Williams ten days in administrative segregation. The complaint further alleges that assignment to administrative segregation was suspended for thirty days. The complaint further alleges that Dunn was "acting in concert" with Silvey.

The complaint alleges that, at some unidentified point in time, Silvey threatened to revoke Williams's visitation privileges because plaintiffs had previously filed grievances and complaints about the PCC visiting room. The complaint does not specify to what degree Silvey had threatened to revoke the privileges or for how long.

The complaint alleges that on April 4, 2008, Major Bowers initiated a new rule regarding the visiting area: that only visitors may use the vending machines and microwaves in the visiting area, with the exception that prisoners whose visitors are

disabled may use the vending machines and microwaves while their visitors remain seated.

On subsequent visits, the complaint alleges, sometimes Williams would be the one to use the vending machines and sometimes Ellis would be the one to do so, depending on whether Ellis's knee was "bothering her." The complaint further alleges that plaintiffs were allowed to carry out their visits this way until May 18, 2008, when Silvey informed Ellis that she must be the one to use the vending machines because she had used them on her previous visit. The complaint further alleges that Ellis was having pain in her knee on that day. The complaint further alleges that they talked to Menteer about the situation and that Menteer told them only one of them may use the vending machines. The complaint further alleges that Menteer threatened to place plaintiff in administrative segregation for complaining about the situation.

The complaint alleges that in August 2008 Silvey would not allow Ellis to use her cane in the visiting area, and Silvey made Ellis perform all of the visiting tasks.

Many of the allegations in the complaint are stated in conclusory terms. For example, the complaint alleges that "Defendants . . . actions/omissions supported maintained, and/or allowed the deprivation of the plaintiffs [*sic*] established constitutional rights to: equal protection; equal privileges; freedom of speech; assemble peaceably together, and due process of law."

## Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556-70 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556) "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557) (quotation mark omitted).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. Id. at 1950-51. These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 1950-51. This is a "context-specific task that requires the reviewing court

to draw on its judicial experience and common sense." Id. at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 1951-52.

**Discussion**

1. Due Process Claims

Defendants argue, first, that Ellis lacks standing to bring a due process claim regarding disciplinary measures taken against Williams. Second, defendants argue that Williams's due process claims must be dismissed because Williams has not alleged facts amounting to an atypical or significant hardship in the context of ordinary prison life.

Plaintiffs argue that Ellis has standing to bring a due process claim because Silvey and Whitener falsely accused both plaintiffs with breaking the prison's rules and those accusations led to Williams being punished. Plaintiffs further argue that their contact visitation privileges were suspended for thirty days in January 2008, causing emotional distress to both plaintiffs.

A plaintiff must have suffered a "concrete and particularized" injury to obtain standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). While plaintiffs claim that Silvey accused Ellis of breaking the prison rules, this does not constitute an actionable injury under § 1983. As a result, Ellis lacks standing to bring a due process claim based on the results of disciplinary proceedings.

An inmate who makes a due process challenge to his placement in administrative segregation must make a threshold showing that the deprivation of which he complains imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Williams's allegations that he was subject to disciplinary proceedings or that he was assigned to administrative segregation for ten days do not indicate that he suffered the type of atypical and significant hardship that might conceivably give rise to a liberty interest. Id. at 485-86 (no atypical and significant hardship where inmate spent 30 days in solitary confinement): Hemphill v. Delo, 124 F.3d 208 (8th Cir. 1997) (unpublished) (same; 30 days in disciplinary segregation, and approximately 290 days in administrative segregation); Wycoff v. Nichols, 94 F.3d 1187, 1190 (8th Cir. 1996) (same; 10 days disciplinary detention and 100 days in maximum security cell). As a result, Williams has failed to state a claim for denial of due process in relation to his allegations regarding disciplinary proceedings.

Similarly, to state a claim for unconstitutional denial of contact visits, a plaintiff must allege "the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin, 515 U.S. at 486. The thirty-day suspension of contact visitation rights was not an atypical and significant hardship in the context of ordinary prison life. See Billups v. Galassi, 202 F.3d 272 (7th Cir. 2000) (table opinion; revocation of visiting privileges not an atypical and significant hardship); see also Overton v. Bazzetta, 539 U.S. 126, 131 (2003) ("[F]reedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context."). As a result, plaintiffs have failed to state a claim for denial of due process in relation to their allegations regarding the suspension of contact visitation privileges.

For these reasons, plaintiffs' due process claims will be dismissed.

2. Retaliation Claims

Defendants argue that Williams's claim for retaliation fails because the complaint alleges that Williams was disciplined in January 2008 and that he did not file any grievances until May 2008. Therefore, defendants argue, the protected activity occurred after he was disciplined, obviating any possible retaliation claim.

Williams argues that he alleged that defendants harassed and threatened him before January 2008 as a result of his having filed grievances. Williams cites to paragraph 11 of the complaint.

"[T]he First Amendment right to petition for redress of grievances includes redress under established prison grievance procedures." Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (citing Sprouse v. Babcock, 870 F.2d 450 (8th Cir.1989)). "Although the filing of a false disciplinary charge is not itself actionable under § 1983, the filing of a disciplinary charge becomes actionable if done in retaliation for the inmate's filing of a grievance." Id. An inmate need not show an independent injury apart from the false disciplinary charge. Id. "Because the retaliatory filing of a disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, the injury to this right inheres in the retaliatory conduct itself." Id.

In paragraph 11 of the complaint, plaintiffs allege that "Defendant Silvey, personally came to the plaintiffs [*sic*] table, in the visiting room, and stated that she is going to take away the plaintiffs [*sic*] visiting privileges because the plaintiffs [*sic*] had filed grievances, and made complaints, about the PCC visiting room." These allegations fail to articulate a set of facts that show that Silvey filed a disciplinary charge against Williams as a result of his having filed a grievance. These allegations demonstrate a mere possibility of Silvey's misconduct, but they "stop[] short of the line

between possibility and plausibility of entitlement to relief." Twombly, 550 U.S. at 557. As a result, Williams's retaliation claims will be dismissed.

    3.    <u>ADA Claims</u>

Defendants argue that Ellis's ADA claims fail to state a claim because Ellis has not alleged that she has a disability as defined by the ADA or that she was substantially limited in any major life activity.

Plaintiffs say that Ellis is disabled due to her total knee replacement and that she sometimes has difficulty walking, which is a major life activity.

Ellis's allegations fall under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "To state a prima facie claim under [Title II of] the ADA, a plaintiff must show: 1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999).

A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1). "Determining

whether an individual has a qualifying disability requires an individualized analysis of the claimed disability." Didier v. Schwan Food Co., 465 F.3d 838, 841 (8th Cir. 2006). "Major life activities under the ADA are basic activities that the average person can perform with little or no difficulty, including 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Battle v. United Parcel Service, Inc., 438 F.3d 856, 861 (8th Cir. 2006) (quoting 29 C.F.R. § 1630.2).

The Supreme Court has instructed that the word " '[s]ubstantially' in the phrase 'substantially limits' suggests 'considerable' or 'to a large degree.'" Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 196 (quoting Webster's Third New International Dictionary 2280 (1976)).[1] "The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with [a major life activity] from qualifying as disabilities." Id. (citing Albertson's, Inc. v.. Kirkingburg, 527 U.S. 555, 565 (1999)). As a result, to show that a major life activity is substantially limited, a plaintiff must have an impairment that "prevents or severely restricts" the major life

---

[1] The Court notes the recent enactment of the ADA Amendments Act, which has partially superseded Williams and other Supreme Court precedent by broadening the definition of "disability" and enlarging the scope of protection available under the ADA. See ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008). However, the amendments, which took effect January 1, 2009, do not apply retroactively, and thus do not affect the Court's analysis here. See, e.g., Moran v. Premier Educ. Group, LP, 599 F. Supp.2d 263, 271-272 (D. Conn. 2009).

activity. Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 685 (8th Cir. 2003) (citing Williams, 534 U.S. at 198).

Ellis's allegations that she could only sometimes comfortably perform tasks such as going to the vending machines during visitations do not rise to the level of a substantial limitation under the ADA (as the ADA was interpreted in 2008). See, e.g., Wood, 339 F.3d at 685 (where plaintiff was numb in parts of the toes on his left foot and his left leg, his left knee collapsed, and he walked with a cane on occasion, his ability to walk was moderately limited, but under Williams the restriction on walking was not severe); Gretillat v. Care Initiatives, 481 F.3d 649, 653 (8th Cir. 2007) (where plaintiff had knee replacement surgery and subsequently suffered pain while walking and had difficulty walking long distances, her walking limitations were not substantial under the ADA). As a result, Ellis's ADA claims will be dismissed.

### 4. Civil Conspiracy Claims

Defendants argue that plaintiffs' civil conspiracy claims should be dismissed because there was no predicate constitutional violation and because plaintiffs have not pled their conspiracy claims with sufficient specificity.

Plaintiffs argue that the factual allegations in the complaint show that defendants conspired to violate plaintiffs' rights because plaintiffs are African-American.

Plaintiffs are "required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008). Because plaintiffs' constitutional claims fail to state a claim upon which relief can be granted, plaintiffs' conspiracy claim fails as well. As a result, plaintiffs' conspiracy claims will be dismissed.

5. Qualified Immunity

"Qualified immunity protects state actors from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Maness v. Dist. Court, 495 F.3d 943, 944 (8th Cir. 2007). Because plaintiffs' constitutional claims fail to state a claim upon which relief can be granted, defendants, in their individual capacities, are entitled to qualified immunity.

6. Official Capacity Claims

Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). "[N]either a State nor its officials acting in their official capacity are 'persons' under § 1983." Id. As a result, the complaint fails to state a claim upon which relief can be granted as to defendants in their official capacities.

For these reasons, the Court will dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion To Dismiss (Docket No. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiffs' complaint is **DISMISSED**.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED** as moot.

An Order of Dismissal shall accompany this Memorandum and Order.

Dated this 24th Day of July, 2009.

*Frederick R. Buckles*

FREDERICK R. BUCKLES
UNITED STATES MAGISTRATE JUDGE